UNITED STATES of America, Appellant,

v.

Lee ALEXANDER and Kenyon Bajus, Defendants,

Lee Alexander, Defendant–Appellee.

No. 432, Docket 88–1324.

United States Court of Appeals, Second Circuit.

Argued Nov. 21, 1988.

Decided Feb. 21, 1989.

See also, 2d Cir., 860 F.2d 508.

Sara Criscitella, Asst. U.S. Atty., N.D.N.Y. (Louis M. Fischer, Atty., U.S. Dept. of Justice, Frederick J. Scullin, Jr., U.S. Atty., N.D.N.Y., Joseph A. Pavone, Asst. U.S. Atty., N.D.N.Y., of counsel), for appellant.

Harold J. Boreanaz, (Boreanaz, Baker & Humann, Buffalo, N.Y., of counsel), for defendant-appellee.

Before PIERCE and PRATT, Circuit Judges, and KENNETH CONBOY, District Judge for the Southern District of New York (sitting by designation).

GEORGE C. PRATT, Circuit Judge:

On this appeal we consider the government's novel argument that specific performance is an appropriate remedy when a criminal defendant breaches a plea agreement. Without deciding whether or not Alexander breached this plea agreement, we hold that specific performance of a plea agreement may be granted to the government when the district court, in the exercise of its sound discretion, determines that it is the appropriate remedy.

## BACKGROUND

Lee Alexander, formerly the mayor of Syracuse, New York, was indicted in 1987 for violating and conspiring to violate the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(c)-(d), for violating the Hobbs Act, 18 U.S.C. § 1951, for conspiring to defraud the United States, 18 U.S.C. § 371, and for income tax evasion. The forty-count indictment also included a claim for forfeiture of Alexander's assets pursuant to 18 U.S.C. § 1963.

Ultimately, Alexander reached an agreement with the government and two days later pled guilty to three counts of the indictment: one count of violating RICO, one count of conspiracy to defraud the government, and one count of income tax evasion.

In the plea agreement:

A. The government agreed:

(1) that the sentences imposed would be served concurrently (¶ 4a);

(2) that no sentence would exceed 10 years imprisonment (¶ 4b);

(3) that fines could not exceed $100,000 (¶ 4b); and

(4) that the government would move to dismiss thirty-seven counts of the indictment, including the claim for forfeiture (¶ 4c); and

B. Alexander agreed:

(1) to plead guilty to three counts of the indictment and to admit facts sufficient to convict him of those charges (¶¶ 5 through 8);

(2) to disclose fully his assets (¶ 9a); and

(3) to surrender to the United States, prior to sentencing, "all assets, including cash, municipal bonds, and past due interest coupons" and to surrender and relinquish any claim to all assets listed on an attached schedule (¶¶ 9d and 9e). The schedule provided specifically for the surrender of all currency, municipal bearer bonds and matured interest coupons acquired, directly or indirectly from the underlying offense, and "precious coins, if any".

Even before the agreement was reached, the government had covered $465,478 of Alexander's assets and, in the agreement, Alexander relinquished all claim to those assets. After the plea agreement was reached, but before sentencing, the government recovered an additional $851,697 in bonds and coupons and $125,000 in cash, bringing the total recovered by the government before sentencing to $1,442,175.

On March 24, 1988, the day set for sentencing, the government asserted that Alexander had not fully complied with the plea agreement in that he had not fully disclosed his assets and he had failed to surrender all of the assets he had agreed to surrender. The government was aware of gold and silver coins worth approximately $20,000 to $30,000 and other assets totaling $79,923.42 that had been in Alexander's possession or control but had not been surrendered. Specifically, these unsurrendered assets included: (a) a check for $32,242.84; (b) a check for $10,000; (c) $2,700 in cash; (d) 21 gold coins and 100 silver dollars; and (e) a check for $34,980.58. Between execution of the plea agreement and the time of sentencing Alexander's attorneys recovered these funds from overseas bank accounts and safe deposit boxes and kept two of the checks (items (a) $32,242.84 and (b) $10,000), the cash, and the gold and silver coins as payment of attorneys' fees. At Alexander's direction, his attorneys sent the third check (item (e) $34,980.58) to New York State in payment of New York State tax liabilities.

After enumerating the unsurrendered assets that the government claimed it was entitled to, the United States Attorney moved for an order of specific performance that would require Alexander or his attorneys to turn over the withheld assets. Alexander's attorneys argued that the assets in dispute were no longer in Alexander's possession or control and that those assets that had been paid to the attorneys were exempt from forfeiture as attorneys' fees. Moreover, Alexander's counsel argued, disposition of this motion before sentencing might create a conflict of interest between attorney and client and jeopardize Alexander's right to a fair sentencing hearing.

The district court, seeking to avoid any possible conflict of interest, reserved decision on the government's motion but ordered Alexander's counsel to retain the disputed funds in an escrow account. The check that had previously been sent to New York State, however, was not subject to any order of the district court. The government agreed that sentencing should go forward, even if the motion for specific performance was to be decided at a later date, as long as the government's claim to the funds was not waived. The government stated: "it's in the best interest of the citizens of this community that this plea agreement not be set aside, that this sentencing go forward, and that the maximum sentence of ten years be imposed."

Alexander was then sentenced to concurrent terms of ten years on count 2, five years on count 3 and five years on count 39. At the end of the sentencing hearing the government, in compliance with the plea agreement, moved to dismiss the remaining counts but, in an apparent attempt to preserve its forfeiture claim, did not move to dismiss count 40 which contained the claim for forfeiture. Alexander's attorney argued that count 40 should be dismissed along with the others as provided in the plea agreement. The district court directed entry of a judgment of conviction under counts 2, 3, and 39, and dismissal of counts 1 and 4 through 38. The judgment did not dispose of count 40.

Three months later, the United States Attorney renewed his motion for specific performance. After hearing argument the district judge ruled that "the application of the government isn't founded on the law and specific performance of this type of matter is not appropriate." We interpret the district court's order to rest on the assumption that specific performance is simply not available to the government to enforce a plea agreement under any circumstances.

The district court erred in that assumption. We hold today that when a defendant breaches his plea agreement, specific performance is available to the government as

a possible remedy. We therefore reverse the order of the district court and remand for consideration of whether Alexander did breach the plea agreement, and if so, whether specific performance is a remedy appropriate to the circumstances here.

## DISCUSSION

### 1. Appealability.

On this appeal, Alexander argues that the order appealed from, denying the government's motion for specific performance, is not a final order under 28 U.S.C. § 1291 because the district court stated that it would allow the government to institute an action for forfeiture of the same assets it seeks here. He argues that this order does not "conclusively determine the rights of the parties". We disagree and hold that the order is final and appealable.

Under the terms of the plea agreement the government was obliged to move to dismiss count 40 of the indictment, the forfeiture claim. Assuming, as the government claimed, that Alexander had breached the plea agreement, the government had a right, prior to sentencing, to rescind the agreement. However, at sentencing, the government waived that right to rescind and urged the court to go forward with sentencing. Having done so, the government could not refuse later to move for dismissal of the claim for forfeiture. Just as the defendant is bound to the terms of the plea agreement, so is the government, and it may not unilaterally rewrite the agreement to protect its interests. Where, as here, the government waives its right to rescind the agreement and allow the defendant to withdraw his guilty plea, it is bound to the terms of the agreement.

However, the government properly asked the court to preserve its right to argue for specific performance of the agreement with respect to the assets that Alexander had failed to surrender, and Alexander consented, in the interest of avoiding a conflict between himself and his attorneys before sentencing, to the court's reserving this claim concerning compliance with the agreement until a later date.

Under these circumstances, the United States Attorney for the Northern District of New York may not now or in the future institute an action for forfeiture on the basis of the crimes of which Alexander was convicted on the basis of his guilty plea under this plea agreement, *see United States v. Abbamonte,* 759 F.2d 1065, 1072 (2d Cir.1985); *United States v. Alessi,* 536 F.2d 978, 981 (2d Cir.1976), and the only avenue for its claim to the disputed assets is a motion for specific performance of the plea agreement. For these reasons, the district court's order denying the government's motion for specific performance is final.

### 2. Specific Performance of Plea Agreements.

It is now well settled that, when the government breaches a plea agreement, a defendant's remedy is either specific performance of the plea agreement or an opportunity to withdraw his guilty plea. *Santobello v. New York,* 404 U.S. 257, 262–63, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971); *United States v. Brody,* 808 F.2d 944, 947 (2d Cir.1986); *see also United States v. Abbamonte,* 759 F.2d at 1071–72. The question presented for review today is whether, when the situation is reversed and it is the defendant who has breached the agreement, specific performance is a possible remedy for the government. We hold that it is.

*Santobello* is the leading case in this area. There a criminal defendant had "'bargained' and negotiated for a particular plea in order to secure dismissal of more serious charges, but also on condition that no sentence recommendation would be made by the prosecutor", and the government had breached that agreement by recommending the maximum sentence. In these circumstances, according to the court, the "interests of justice and appropriate recognition of the duties of the prosecution in relation to promises made in the negotiation of pleas of guilty" entitled the criminal defendant to either (1) specific performance of the agreement or (2) an opportunity to withdraw his guilty plea. The determination of which of these two reme-

dies was appropriate in the circumstances of the case was left to the discretion of the district court. *Santobello*, 404 U.S. at 262–63, 92 S.Ct. at 499.

This holding was based in part on the notion that where a guilty plea is induced by a prosecutor's promise that is not kept, the criminal defendant's waiver of his constitutional right to trial must be held to be involuntary, and therefore, ineffective. But it also relies on the fundamental principle that one party cannot be held to a bargain that the other party has breached. Although *Santobello* does not use the term "contract" when referring to a plea agreement, the remedies that it adopts for the government's breach of a plea agreement are rescission and specific performance—both traditional contract remedies.

Several courts have held that plea agreements should be interpreted under the ordinary principles of contract law. *See, e.g., United States v. Papaleo*, 853 F.2d 16, 19 (1st Cir.1988); *United States v. Kingsley*, 851 F.2d 16, 21 (1st Cir.1988); *United States v. McGovern*, 822 F.2d 739, 743 (8th Cir.), *cert. denied,* — U.S. —, 108 S.Ct. 352, 98 L.Ed.2d 377 (1987). This court applied at least one contract principle to plea agreements when it held that "[i]n determining whether a particular plea agreement has been breached, we look to 'what the parties to this plea agreement reasonably understood to be the terms of the agreement.'" *United States v. Carbone*, 739 F.2d 45, 46 (2d Cir.1984) (*quoting Paradiso v. United States*, 689 F.2d 28, 31 (2d Cir.1982) (per curiam), *cert. denied,* 459 U.S. 1116, 103 S.Ct. 752, 74 L.Ed.2d 970 (1983)).

Alexander argues, without citing authority, that the government should never be entitled to specific performance, even though it is a remedy sometimes available to a criminal defendant who seeks to obtain the benefit of his plea bargain. He argues that, because none of the cases providing specific performance of plea agreements has yet provided that remedy to the government and since none involved forfeiture or surrender of assets, *Santobello* and its progeny are not applicable to this case.

In particular, he argues that specific performance is available as a remedy "solely" for "prosecutorial misfeasance", and should not be extended to the situation here, where the defendant is alleged to have breached the plea agreement. We disagree. Although each of the prior cases recognizing specific performance as a remedy for breach of a plea agreement arose in the context of the government's breach, we see no reason to deny the government a similar remedy for the defendant's breach of the plea agreement in appropriate circumstances.

In this case the government seeks to enforce a provision of the agreement that requires Alexander to surrender the disputed assets. Alexander has already pled guilty and surrendered some of the assets listed in the plea agreement, and the government has complied substantially with its part of the bargain by moving to dismiss the thirty-six other counts. Except for its failure to move to dismiss the forfeiture count, the government has completed its performance of the agreement and will have no further opportunity to compel Alexander's full performance unless it may obtain specific performance. A defendant in a similar position would be entitled to some relief, either specific performance or withdrawal of his plea, at the discretion of the district court. We hold today that the government was entitled to similar remedies, but since it proceeded with the sentencing it has already waived its right to rescind the plea agreement and specific performance is all that remains. We leave it to the discretion of the district court to determine in the first instance whether under the circumstances specific performance would be appropriate in this case.

3. *Application of* United States v. Monsanto.

■ We reject Alexander's claim that granting specific performance of the plea agreement would take fees from attorneys and therefore would conflict with our decision in *United States v. Monsanto*, 852 F.2d 1400 (2d Cir.), *cert. granted,* — U.S. —, 109 S.Ct. 363, 102 L.Ed.2d 353 (1988). *Monsanto* concerned the pre-trial restraint

of assets subject to forfeiture under the Comprehensive Forfeiture Act of 1984, 21 U.S.C. § 853; this case does not involve statutory forfeiture. On the contrary, the plea agreement required the government to dismiss its forfeiture claim and at the same time required the defendant to surrender his assets. While this could reasonably be viewed as an agreement in lieu of the statutory forfeiture, the narrow rulings of *Monsanto*, as to the reach of pre-trial restraint of assets and even the operation of the statute's relation back provision, 21 U.S.C. § 853(c), simply do not apply to the terms of Alexander's voluntary consent.

The schedule of assets that accompanied the plea agreement, which incidentally was also signed by Alexander's attorneys, plainly states that all precious coins were to be surrendered, as well as all currency, municipal bearer bonds, and matured interest coupons that were "acquired, directly or indirectly through the underlying offense". Alexander's attorneys argue that at the time of the agreement it was understood that attorneys' fees would be paid from some of Alexander's assets; the government asserts that no such agreement or understanding was reached concerning attorneys' fees. While we do not now decide what, if anything, the parties understood concerning attorneys' fees, we cannot say that Alexander could not have agreed, voluntarily and with the advice of counsel, to surrender all of the assets in dispute and not to reserve any for the payment of counsel, in exchange for the government's agreement to drop thirty-seven counts of the indictment. We therefore leave it to the district court also to determine "what the parties to this plea agreement reasonably understood to be the terms of the agreement" *Paradiso v. United States,* 689 F.2d at 31, including whether or not the parties intended the agreement to exempt attorneys' fees from those assets that were to be surrendered.

## CONCLUSION

Specific performance is a possible remedy available to the government to enforce a defendant's obligations under a plea agree-

ment. We remand for whatever proceedings may be necessary to determine what the parties to this agreement intended, whether a breach occurred, whether specific performance is an appropriate remedy here, and if so, what specifically should be required of defendant and his attorneys.

REVERSED AND REMANDED.