898 F.2d 148
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
William GEORGE, a/k/a Pee Wee, Defendant-Appellant.
 No. 89-5604.
 United States Court of Appeals, Fourth Circuit.
 Argued: Nov. 3, 1989.
Decided: Feb. 21, 1990.
 
 Appeal from the United States District Court for the Northern District of West Virginia, at Elkins. Robert E. Maxwell, Chief District Judge. (CR-88-00174)
 Thomas A. Livingston; John Preston Bailey (Byrum & Bailey, on brief), for appellant.
 John H. Reed, Assistant United States Attorney (William A. Kolibash, United States Attorney, on brief), for appellee.
 N.D.W.Va.
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 Before DONALD RUSSELL and WILKINSON, Circuit Judges, and HIRAM H. WARD, Senior United States District Judge for the Middle District of North Carolina, sitting by designation.
 PER CURIAM:
 
 
 1
 William George appeals the district court's denial of his motion to suppress property seized during a search of his business establishment in connection with an investigation of a gambling ring operation in Wheeling, West Virginia. George also appeals the sentence imposed upon him by the district judge on grounds that the judge erred in refusing to follow the sentencing provisions in his plea agreement. We affirm in part, reverse in part, and remand for resentencing.
 
 I.
 
 2
 On December 20, 1987, federal agents, assisted by state law enforcement personnel, executed a series of warrants issued by a magistrate for the search of sixteen locations, four vehicles, and eleven individuals in the Wheeling, West Virginia, area pursuant to an investigation of an illegal gambling ring controlled by Paul Hankish and Charles Jacovetty. One of the premises searched was Mary's Holiday Inn, a restaurant operated by the appellant, William George. The search warrants were issued based upon affidavits of probable cause submitted by Trooper Michael Walker of the West Virginia Department of Public Safety.
 
 
 3
 Trooper Walker's affidavit, though 60 pages in length with an additional 87-page attachment, contained only two allegations relating to Mary's Holiday Inn or William George. The first allegation stated:
 
 
 4
 117. On Saturday, December 12, 1987, a Task Force Agent, acting in an undercover capacity, entered Mary's Holiday Inn, 86-16th Street, Wheeling, West Virginia. The agent observed an individual believed to be Pee Wee George sitting on a table on the west side of the bar. This individual had football betting schedules and was overheard giving out line information and taking bets. This individual was recording these bets on slips of paper which he had on the table.
 
 
 5
 Joint Appendix ("J.A.") at 93. The other allegation stated that, of the 1,158 calls recorded by pen register and listed in the attachment to the affidavit for the warrant, there was one call made from Paul Hankish's place of business to Mary's Holiday Inn on Thursday, October 29, 1987, at 5:20 p.m. J.A. at 65, 131.
 
 
 6
 The search of Mary's Holiday Inn resulted in the seizure of substantial gambling-related paraphernalia, records, and proceeds. Additionally, during the course of the search, an agent received a telephone call from a football bettor.
 
 
 7
 After the return of the 38-count indictment against him, George filed a motion to suppress the property seized by the agents during the search. George argued that there was no probable cause for the issuance of the warrant and that the warrant and its execution were overly broad. After the district court denied his motion, George entered a conditional plea to Count Four and to Count Thirty-six. George entered the plea pursuant to a written plea agreement which provided, in relevant part:
 
 
 8
 3. The plea entered by Mr. George to Count Four of the Indictment shall be a conditional plea under the provisions of Rule 11(a)(2) of the Federal Rules of Criminal Procedure reserving the right of Mr. George to appellate review of any adverse ruling by the District Court with respect to the defendant's Motion to Suppress, which Motion was filed on the defendant's behalf by James A. Byrum, Esquire, on January 9, 1989.
 
 
 9
 4. The United States and Mr. George agree, pursuant to Rule 11(e)(1)(C) of the Federal Rules of Criminal Procedure, that any sentence of incarceration imposed on either count shall be concurrent with the sentence of incarceration imposed on the other count.
 
 
 10
 J.A. at 248. Despite the above language in the plea agreement, the district judge ordered that the sentences on the two counts run consecutively.
 
 
 11
 George appeals the denial of his motion to suppress the evidence seized during the search of his restaurant and the consecutive sentences imposed upon him by the trial judge.
 
 II.
 
 12
 On appeal George contends that the affidavit for the search warrant failed to establish sufficient probable cause for the issuance of the warrant and that the evidence obtained during the search should therefore be suppressed pursuant to the judicially created exclusionary rule. See Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914); Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). George also argues that the warrant and its execution were overly broad and therefore constituted a general search in violation of the fourth amendment.
 
 
 13
 The government argues that, under the "totality of the circumstances," the issuing magistrate had a substantial basis for concluding that a search would uncover evidence of a federal offense and that, accordingly, the magistrate's determination of probable cause must be upheld. Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Alternatively, the government maintains that even if the magistrate erred in issuing the search warrant in question, the evidence is nevertheless admissible as it was obtained in good faith reliance on a search warrant issued by a neutral and detached magistrate. United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).
 
 
 14
 A determination that probable cause is lacking is not always necessary before addressing the good faith exception under Leon, particularly where the fourth amendment question posed is neither novel nor of broad import. United States v. Edwards, 798 F.2d 686, 690 n. 2 (4th Cir.1986) (citing United States v. Maggitt, 778 F.2d 1019, 1033 (5th Cir.1985)). Accordingly, we find it unnecessary to resolve the question concerning the warrant's sufficiency under Gates given our determination that the circumstances here clearly meet the good faith exception of Leon.
 
 
 15
 In Leon the Supreme Court held that the fourth amendment exclusionary rule does not bar the admission of evidence obtained by officers acting in reasonable reliance on a search warrant, issued by a detached and neutral magistrate, which is ultimately found to be unsupported by probable cause. The Court reasoned that the purpose of the exclusionary rule would not be furthered by suppression of relevant and probative evidence when an officer acts in good faith reliance on a facially valid warrant.
 
 
 16
 The Court emphasized that the standard for assessing the officers' good faith reliance on the magistrate's probable cause determination is one of objective reasonableness and stated that there are four situations in which it would not be objectively reasonable for police officers to rely on a warrant. First, officers may not rely on a warrant issued on the basis of a deliberately falsified affidavit. Leon, 468 U.S. at 923, 104 S.Ct. at 3420, 82 L.Ed.2d at 699. Second, officers cannot rely on a warrant where the magistrate has wholly abandoned his neutral and detached role and merely acts as a "rubber stamp" for the police. Id. Third, officers may not rely on a warrant based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence unreasonable." Id. Fourth, officers may not rely on a warrant if it is "so facially deficient--i.e., in failing to particularize the place to be searched or the things to be seized--that the executing officers cannot reasonably presume it to be valid." Id.
 
 
 17
 Applying the Leon template to the instant case, we hold that the officers' reliance on the magistrate's determination of probable cause was objectively reasonable and that exclusion of the evidence would be inappropriate. Because there is no allegation that the magistrate abandoned his judicial role and failed to perform his duty in a neutral and detached manner, suppression would be appropriate only if the officers were dishonest in preparing their affidavit or if the officers could not have harbored an objectively reasonable belief in the existence of probable cause. Id. at 926, 104 S.Ct at 3422, 82 L.Ed. at 701. There is no evidence that the officers acted dishonestly or recklessly in preparing the affidavit and, in fact, there has been no such allegation. Nor is there any factual basis for concluding that the officers could not have harbored an objectively reasonable belief in the existence of probable cause for issuance of the warrant. The government's application for the warrant was supported by much more than a "bare bones" affidavit. Indeed, Trooper Walker's affidavit, 60 pages in length with an additional 87-page attachment, related the results of an extensive investigation of the gambling ring and clearly provided evidence sufficient for a finding of probable cause. Thus, the warrant was neither so lacking in probable cause nor so facially deficient as to preclude application of the good faith exception under Leon. Under these circumstances, the officers' reliance on the magistrate's determination of probable cause was objectively reasonable and application of the extreme sanction of exclusion would be inappropriate.
 
 
 18
 Accordingly, the district court's denial of George's motion to suppress is affirmed.
 
 III.
 
 19
 George also alleges that the district court erred in sentencing him to consecutive prison sentences after the court had previously accepted his plea and filed as part of the record a written plea agreement containing a binding sentencing provision pursuant to Federal Rule of Criminal Procedure 11(e)(1)(C). The plea agreement provided that "any sentence of incarceration imposed on either count shall be concurrent with the sentence of incarceration imposed on the other count." J.A. at 248.
 
 
 20
 Notwithstanding the above agreement, the district court ruled at the sentencing hearing that its two-year sentence of incarceration on one count and one-year sentence of incarceration on the second count should run consecutively. When counsel for the appellant objected, the court responded, "I am not going to [make the sentences of incarceration concurrent]. I know that was the recommendation in the Plea Agreement, but I am not going to do that." J.A. at 286.
 
 
 21
 When a plea agreement of the type specified in Rule 11(e)(1)(C) is tendered, the court may accept or reject the agreement, or the court may defer its decision as to the acceptance or rejection until there has been an opportunity to consider the presentence report. If the decision is reserved and the court subsequently rejects the plea agreement, it must afford the defendant an opportunity to withdraw the plea. Here the record does not reveal that the district court deferred its decision, and it is likewise unclear whether it accepted the terms of the plea agreement when it received George's guilty plea. However, it is well settled that such an ambiguity must be resolved in George's favor. See United States v. Holman, 728 F.2d 809 (6th Cir.), cert. denied, 469 U.S. 983 (1984). Once a court has accepted a plea agreement under Rule 11(e)(1)(C), it is bound by that agreement and must impose the agreed upon sentence. United States v. Jackson, 563 F.2d 1145, 1147 n. 4 (4th Cir.1977).
 
 
 22
 We hold that the district court erred in ordering that the sentences of incarceration run consecutively. Accordingly, we vacate the sentence imposed on the two counts and remand for resentencing consistent with the plea agreement.
 
 
 23
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.