UNITED STATES of America,
Plaintiff–Appellant,

v.

John Edward SKIDMORE, Jr. (92–3665),
and John Edward Skidmore, Sr. (92–
3666), Defendants–Appellees.

Nos. 92–3665, 92–3666.

United States Court of Appeals,
Sixth Circuit.

Argued March 22, 1993.

Decided July 8, 1993.

Kathleen M. Brinkman (argued and briefed), Office of the U.S. Atty., Cincinnati, OH, for plaintiff-appellant.

Arthur H. Schlemmer, Rex A. Wolfgang (argued and briefed), Barron, Peck & Bennie, Cincinnati, OH, for defendants-appellees.

Before: KENNEDY, MARTIN, and MILBURN, Circuit Judges.

BOYCE F. MARTIN, Jr., Circuit Judge.

John Skidmore, Jr. and John Skidmore, Sr. were each charged with one count of selling an unlawful electronic device which permitted illegal interception of premium television channels, in violation of 18 U.S.C. § 2512(1)(b). The Skidmores agreed to plead guilty to the charge in return for the government's agreement not to bring any additional charges against them. A provision of the plea agreement required the Skidmores to forfeit substantial property to the United States pursuant to 18 U.S.C. § 2513. The district court accepted the guilty pleas but expressed reservations about the propriety of forfeiture. At sentencing, the court ordered the United States to return the Skidmores' property, despite the plea agreement provision calling for forfeiture of the property to the United States. The United States appeals the district court's modification of the plea agreement by ordering the United States to return the property to the Skidmores. We reverse.

At all times relevant to this appeal, John Skidmore, Sr. operated a business called Harrison Appliance and Furniture Store. John Skidmore, Jr. worked for his father at the store. In late 1989 and early 1990, local law enforcement agencies and the FBI received complaints from legitimate satellite dealers that the Skidmores were manufacturing and selling illegally modified decoder modules. According to the complaints, the illegal decoder modules enabled satellite television subscribers to receive premium pay cable services without paying a fee to the programmers.

To conduct an investigation of the Skidmores, the FBI obtained two working decoder boxes which had not been programmed to receive premium channels on satellite television transmission. On March 6, 1990, an undercover FBI agent contacted Skidmore, Sr. and inquired about obtaining an illegally modified decoder box. Skidmore, Sr. told the agent that he would either modify the agent's decoder box or that he would exchange the agent's legal decoder box for an illegal box for $490. Skidmore, Sr. told the agent that with the illegal box, he would receive free HBO, Showtime, ESPN, both Disney Channels, and several other premium movie channels. Skidmore, Sr. then instructed the agent to remove a module from his decoder box and explained that he would use a computer to program a computer chip in the module to receive free satellite programming. On March 8, the undercover agent delivered one of the decoder boxes for modification to Skidmore, Sr. at Harrison Appliance and Furniture.

On March 9, the agent telephoned Skidmore, Sr., who informed him that he could pick up his modified decoder box. Skidmore, Sr. again advised the agent of the price. Later that day, the agent went to Harrison Appliance and Furniture, where he met with both Skidmore, Sr. and Skidmore, Jr. Using the satellite television system installed in the store, the Skidmores demonstrated the operation of the modified decoder box. The agent paid the Skidmores for the modification. Skidmore, Sr. then instructed the agent to telephone him each month to receive a code to enter in the decoder box to allow continued receipt of the free channels. On March 26, another undercover agent paid Skidmore, Sr. at the store to modify another decoder box.

On June 5, federal search warrants were executed at Harrison Appliance and Furniture and at the residences of Skidmore, Sr. and Skidmore, Jr. Agents seized evidence related to the illegal modification of decoder boxes, including devices actually used in the illegal modification process and similar items which may or may not have actually been used in the illegal activity.

On March 26, 1991, the United States issued one-count informations against both Skidmore, Sr. and Skidmore, Jr., charging each with violating 18 U.S.C. § 2512(1)(b),

Sale of an Unlawful Electronic Interception Device. The defendants appeared before the district court on April 19 to waive indictment and enter guilty pleas. The district court refused to accept the pleas, expressing concern about whether federal criminal prosecution was more appropriate than a private civil action against the defendants by the satellite programmers. The court then directed the prosecution to submit a detailed statement of the offense for the court to consider before accepting the guilty pleas.

On May 31, the Skidmores again appeared before the district court for waiver of indictment and entry of their guilty pleas. By this time, the court was satisfied that federal prosecution was appropriate, and the Skidmores had entered into plea agreements with the prosecution pursuant to FED.R.CRIM.P. 11(e)(1)(A). In return for the guilty pleas, the prosecution promised in both agreements that it would not file any additional charges against the Skidmores. In addition, the plea agreement provided that the defendants would forfeit, under 18 U.S.C. § 2513, the equipment and other items seized by the United States during execution of the search warrants. The district court accepted each defendant's guilty plea. When considering the plea agreements, however, the court indicated that it had "some reservations" about the forfeiture provision and that it would hear from the prosecution on the issue of forfeiture at an unspecified later date. The court did not expressly accept or reject the plea agreements, even though it followed the other procedures required for accepting a defendant's guilty plea and ultimately accepted the pleas from both Skidmore, Sr. and Skidmore, Jr. On August 23, the district court sentenced each defendant to two years' probation. Despite the forfeiture provision in the plea agreements, however, the court ordered the United States to return all items seized during the execution of the search warrants to the Skidmores. The court did not hear arguments on the forfeiture issue before issuing the sentences or ordering the return of the property to the defendants.

The prosecution filed a motion to amend the district court's Judgment and Commitment Order on September 11, in which it requested that the court delete its directive that the United States return the defendants' property and conform to the terms of the original plea agreement. To preserve its right to appeal, the prosecution filed a notice of appeal on September 20, before the district court ruled on the motion to amend. After conducting a hearing on the motion to amend, the district court issued an order on November 14 in which it refused to rule on the motion. On January 31, 1992, this court dismissed the prosecution's appeal, vacated the district court's order in which it refused to rule on the prosecution's motion to amend, and directed the court to rule on the motion. On June 9, the district court denied the motion to amend, finding that the prosecution had failed to make a proper showing that the property seized from the Skidmores was subject to forfeiture.

On July 2, the prosecution filed this appeal, arguing that the district court violated Rule 11 by failing to conform to the terms of the plea agreements entered into by the prosecution and the Skidmores. Specifically, the United States contends that the district court improperly modified the plea agreement by directing the United States to return the seized property, despite the plea agreement's provision for forfeiture of the property to the United States. The United States seeks specific performance of the terms of the plea agreement it entered with the defendants, including the forfeiture provision.

Rule 11(e) of the Federal Rules of Criminal Procedure precisely defines the role of the court in the plea agreement process. *United States v. Holman*, 728 F.2d 809, 811 (6th Cir.), *cert. denied*, 469 U.S. 983, 105 S.Ct. 388, 83 L.Ed.2d 323 (1984). Subsection (1) sets forth three types of agreements that the prosecution may make with a defendant. FED.R.CRIM.P. 11(e)(1). The rule requires the district court to follow particular procedures in accepting a guilty plea and ruling on a proposed plea agreement, depending on the type of plea agreement at stake. FED. R.CRIM.P. 11(e)(2). If the plea agreement is one in which the prosecution agrees to dismiss other charges against the defendant, such as the agreement in this case, the court

has only three options: "the court may accept or reject the agreement, or may defer its decision as to acceptance or rejection until there has been an opportunity to consider the presentence report." *Id.* If the court accepts the plea agreement, the court must inform the defendant "that it will embody in the judgment and sentence the disposition provided for in the plea agreement." FED. R.CRIM.P. 11(e)(3). If, however, the district court rejects the plea agreement, it must provide the defendant with an opportunity to withdraw the guilty plea and advise the defendant that failure to withdraw the plea may result in a sentence less favorable than that contained in the plea agreement. FED. R.CRIM.P. 11(e)(4). "[T]he district court is not authorized to go beyond the confines of Rule 11 in accepting or rejecting plea agreements." *United States v. Partida–Parra,* 859 F.2d 629, 632 (9th Cir.1988).[1] Nothing in the rules even remotely allows the district court to accept a guilty plea but rewrite the plea agreement, even if the modified agreement is more favorable to the defendant. *United States v. Olesen,* 920 F.2d 538, 540 (8th Cir.1990). In fact, Rule 11 specifically prohibits the district court from participating in the plea agreement process. FED. R.CRIM.P. 11(e)(1). We have interpreted this prohibition stringently. *See United States v. Barrett,* 982 F.2d 193, 195 (6th Cir.1992).

We have previously held that the district court's failure to indicate the status of the plea agreement, within the requirements of Rule 11(e)(2), at the time the court accepts the guilty pleas operates as an acceptance of the agreement. *Holman,* 728 F.2d at 812. In this case, the district court neither accepted nor rejected the plea agreement. Although the court expressed some reservations about the forfeiture provision when it accepted the guilty pleas, it left the status of the plea agreement unclear. Equivocation does not amount to a rejection of the proposed plea agreement. We must construe the ambiguity against the district court. *Id.* As such, the court's failure to elect clearly one of the options specified in Rule 11(e)(2)

amounted to an acceptance of the plea agreement. *Id.*

Once the district court has accepted a plea agreement, we have traditionally regarded the agreement as a type of contract, and we have analyzed the respective obligations of the prosecution and the defendant under general principles of contract law. *See United States v. Mandell,* 905 F.2d 970, 973 (6th Cir.1990). A guilty plea, however, involves the waiver of at least three constitutional rights by a defendant. *See Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971); *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). Therefore, the analogy of a plea agreement to a traditional contract is not complete or precise, and the application of ordinary contract law principles to a plea agreement is not always appropriate. *United States v. Olesen,* 920 F.2d 538, 541 (8th Cir.1990).

Nonetheless, contract principles have substantially influenced the issue whether a plea agreement has been breached, and of what remedies are due in the event of a breach. *See, e.g., United States v. Alexander,* 869 F.2d 91, 94–95 (2d Cir.1989). "In determining whether a particular plea agreement has been breached, we look to 'what the parties to this plea agreement reasonably understood to be the terms of the agreement.'" *United States v. Carbone,* 739 F.2d 45, 46 (2d Cir.1984) (quoting *Paradiso v. United States,* 689 F.2d 28, 31 (2d Cir. 1982), *cert. denied,* 459 U.S. 1116, 103 S.Ct. 752, 74 L.Ed.2d 970 (1983)). When the prosecution breaches a plea agreement, the breach "may be remedied by either specific performance of the agreement or by allowing the defendant to withdraw the plea." *Mandell,* 905 F.2d at 973 (citing *Santobello v. New York,* 404 U.S. 257, 262–63, 92 S.Ct. 495, 498–99, 30 L.Ed.2d 427 (1971)). "Conversely, 'a defendant's failure to fulfill the terms of a pretrial agreement relieves the government of its reciprocal obligations under the agree-

---

1. A court may bypass the limits of Rule 11 only in cases involving the commission of a fraud upon the court. *United States v. Olesen,* 920 F.2d 538, 540 (8th Cir.1990). In this case, however, there are no allegations of fraud. Thus, the district court had no authority to go outside the bounds of Rule 11.

ment.'" *United States v. Verrusio*, 803 F.2d 885, 888 (7th Cir.1986) (quoting *United States v. Calabrese*, 645 F.2d 1379, 1390 (10th Cir.), *cert. denied*, 451 U.S. 1018, 101 S.Ct. 3008, 69 L.Ed.2d 390 (1981)). In addition, the district court may, in its sound discretion, permit the prosecution to seek specific performance of the plea agreement when a defendant has breached the agreement. *Alexander*, 869 F.2d at 94. This case, however, presents a highly unusual set of facts in which the district court decided neither to accept nor reject the plea agreement as written, options clearly within the district court's authority. FED.R.CRIM.P. 11(e)(2). Rather, the court rewrote the plea agreement by excising a key provision of the agreement. Under contract principles, the district court's order that the prosecution return the property that the defendants had agreed to forfeit contravened terms of the plea agreement as the parties understood those terms. As such, the district court breached the agreement. *See Carbone*, 739 F.2d at 46.

Because we find that the district court improperly modified the plea agreement by excising the forfeiture provision, we must consider what remedies are available to correct this action. The United States has argued that it is entitled to specific performance of the plea agreement with the forfeiture provision. The Second Circuit has held that the United States may seek specific performance of a plea agreement if a defendant breaches the terms of the agreement. *Alexander*, 869 F.2d at 94. The court noted, however, that the district court retained discretion to fashion an appropriate remedy, and that specific performance might not always be the best remedy. *Id.* at 95. In our opinion, specific performance of the plea agreement will rarely be an appropriate remedy to afford the United States. The unusual circumstances of this case, however, warrant such relief. Not only did the district court accept the terms of the plea agreement by failing to indicate the status of the agreement when it accepted the defendants' guilty pleas, counsel for the defendants stated at oral argument that the defendants did not wish to withdraw their guilty pleas. The district court's flagrant disregard for the procedures and limits established in Rule 11

cannot stand. We believe that specific performance of the plea agreement, including the forfeiture provision, is the most appropriate solution.

We note that the district court could have prevented this situation by simply following the provisions of Rule 11. The record demonstrates that the district court was dissatisfied with the forfeiture provision of the plea agreement. Rule 11 expressly permits a court to reject a proposed plea agreement, provided that the court allow the defendant to withdraw the plea and advise the defendant of the potential consequences of withdrawing a plea. Rule 11 does not limit the reasons for which the district court may reject a proposed plea agreement; rather, its terms permit a district court to reject a plea agreement either because the proposed agreement is too lenient or because it is too harsh. Although it may be a rare case where the district court finds the proposed agreement too harsh, the Rule provides for those cases. Rather than rewrite the proposed agreement, the district court could have rejected the agreement, allowed the defendants the opportunity to withdraw their pleas, and imposed the sentence it ultimately imposed under its rewritten plea agreement. The court chose, however, not to express the status of the plea agreement, and we must construe this silence as an acceptance of the agreement. *Holman*, 728 F.2d at 813. Having accepted the agreement, the district court was required to adhere to the terms contained in the agreement as the parties understood those terms. *Olesen*, 920 F.2d at 540. The court had no authority to enforce only selected provisions of the agreement, even though it may have believed that the defendants made a mistake in agreeing to forfeit their property. *Partida–Parra*, 859 F.2d at 633.

Therefore, we vacate the judgment of the district court insofar as that judgment orders the United States to return the property to the defendants and order that the district court reenter judgment consistent with the terms of the plea agreement.