**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

No. 22-4625

_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

TRECIKA VANTINA DUNLAP,

Defendant - Appellant.

_____

No. 22-4646

_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

VERA G. DUNLAP,

Defendant - Appellant.

_____

Appeals from the United States District Court for the United States District Court for the District of South Carolina, at Columbia.  Mary G. Lewis, District Judge.  (3:19-cr-00781-MGL-2; 3:19-cr-00781-MGL-3)

_____

Argued:  March 22, 2024                    Decided:  June 18, 2024

_____

Before GREGORY, WYNN, and HARRIS, Circuit Judges.

_____

Vacated and remanded with instructions by published opinion. Judge Gregory wrote the opinion, in which Judge Wynn and Judge Harris joined.

———————————

**ARGUED:** Kimberly Harvey Albro, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Columbia, South Carolina; Howard Walton Anderson, III, THE LAW OFFICES OF TRULUCK THOMASON, LLC, Greenville, South Carolina, for Appellant. Emily Evans Limehouse, OFFICE OF THE UNITED STATES ATTORNEY, Greenville, South Carolina, for Appellee. **ON BRIEF:** Suha Najjar, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Columbia, South Carolina, for Appellants. Adair F. Boroughs, United States Attorney, Columbia, South Carolina, Leesa Washington, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greenville, South Carolina, for Appellee.

———————————

GREGORY, Circuit Judge:

Vera and Trecika Dunlap (collectively, Defendants) pleaded guilty to jury tampering. In written plea agreements, entered into pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), they agreed to serve twelve months and one day of incarceration. On appeal, Vera and Trecika argue that the district court accepted the plea agreements, but then deprived them of the bargain they made with the government by imposing a higher sentence than that stipulated to in the plea agreements, while still nominally attempting to enforce the agreements' remaining terms. The government argues that the district court rejected the plea agreements. Today we hold that when a record is ambiguous as to whether the district court accepted or rejected a Rule 11(c)(1)(C) plea agreement, the ambiguity must be construed in the defendant's favor. Because we conclude that the record here is ambiguous, and Defendants advocate for acceptance of the agreements, we vacate the judgement insofar as it conflicts with the terms of the plea agreements, and remand for reentry of the judgments consistent with this opinion and the stipulated sentence set forth in the plea agreements.

I.

Appellant Vera Dunlap is Appellant Trecika Dunlap's mother. Both pleaded guilty to jury tampering in violation of 18 U.S.C. §§ 1503(a) and 1503(b)(2). Trecika's father (Vera's husband), Tressie Dunlap, and Trecika's brother (Vera's son), Terrence Dunlap, were also involved and charged in the jury tampering scheme. But Tressie died of multiple organ failure during the pendency of these proceedings, after which the charges against

3

him were dismissed, and Terrence is not a party to this appeal, so this case concerns only Vera and Trecika's guilty pleas and sentences.

The relevant events transpired during a separate criminal trial in which Terrence and four co-defendants were tried for drug and firearms offenses. As set forth in Vera's and Trecika's pre-sentence reports, the relevant facts are as follows. On the sixth day of the eight-day trial, Vera, Trecika, Tressie, and Terrence followed a juror from the courthouse to an area near the juror's residence. When the juror pulled over, the Dunlaps spoke to him and offered him money in exchange for a not-guilty vote in Terrence's trial. Though the Dunlaps asked the juror not to report the encounter, the juror reported it to the FBI that evening and the district court the following day. Following an investigation to corroborate the juror's account, the Dunlaps were charged with jury tampering.

The Rule 11(c)(1)(C) plea agreements under which Vera and Trecika pleaded guilty to the jury tampering charge stipulated that

> both parties agree that the appropriate disposition of this case (irrespective of any fines and/or forfeitures) is a sentence of **12 months and 1 day** incarceration, followed by the appropriate statutory term of supervised release. In the event that the Defendant complies with all terms of this Agreement and the Court declines to impose this sentence, the Defendant will have the right to withdraw his/her FRCRP 11(C)(1)(c) plea. If the Defendant does not comply with all the terms of this Agreement, the United States will seek the maximum sentence allowed by law and the Defendant will not be allowed to withdraw his/her plea.

J.A. 58 (Trecika) (emphasis in original); J.A. 64 (Vera) (emphasis in original).[1]

---

[1] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

On October 6, 2021, the district court—the same judge that presided over Terrence's trial during which the jury tampering occurred—held a combined change-of-plea hearing for Terrence, Trecika, and Vera. The court never explicitly indicated during the hearing whether it accepted, rejected, or was deferring a decision on the plea agreements. However, the minute entry contemporaneously entered onto the docket states "Plea Agreement Accepted." J.A. 27. The docket entry was not subsequently changed and remains the same to this day.

The district court held separate sentencing hearings for Trecika and Vera. Vera's hearing was held first. Addressing the government, the district court expressed its hesitation about imposing the stipulated sentence:

> I'm having a hard time getting there. I normally am very happy to accept what the government and the defense have agreed to because I feel that, you know, in the general sense you know more about the case than I do . . . . And [at Terrence Dunlap's hearing] . . . I expressed . . . just how destructive really that kind of behavior can be and is . . . .

J.A. 140–41. Instead of defending the agreement the government had entered into, counsel for the government agreed with the court. She expressed that, like the court, she had "wrestled with it and continue[s] to wrestle with" it. J.A. 141. She also stated that "as I've said on the record a couple of times at least, this is one of the most serious offenses I've ever dealt with. And I don't know that we've reached the right answer. I don't know." *Id.* But, she went on, having talked it through with a colleague and with the law enforcement agents involved in the investigation, "at the end of the day we decided that despite everything else and how I feel about what they did, we felt like this was a sentence that we could live with and could defend, and that's really all I have to offer." J.A. 143.

5

The court determined that it would "reject the plea agreement provision that requires the sentence of a year and a day." J.A. 149. It explained that it did not believe "that this is a sufficient sentence for this particular offense under these circumstances." *Id.* The court then informed Vera that she had the right to withdraw her plea and continued the hearing for 30 days, during which Vera could decide whether to withdraw her plea or proceed to sentencing without the benefit of the stipulated sentence. J.A. 150, 158. The district court also calculated the applicable guidelines range to be 46 to 57 months. J.A. 263.

At Trecika's hearing four months later, the district court noted that "I know we have an 11(c)(1)(C) plea agreement in this case" but that the court sought "the government's view about" the agreed upon 12-months-and-a-day sentence "and why the Court should accept that given the seriousness of what Ms. Dunlap did . . . and with just no regard at all for the serious consequences of her actions." J.A. 166. As she had done at Vera's hearing, counsel for the government did not defend the parties' agreement, but rather stated that she has "second-guessed" herself since entering into the agreement. J.A. 166. She stated that she has "told each of these defendants and their counsel that this is quite clearly in my mind the most serious offense that I have ever prosecuted." J.A. 166–67. She then stated that "I made an offer that I believe may have been too low . . . . And so, while it would be disingenuous for me to now say that a guideline sentence is appropriate from my perspective, I don't think that I can fully justify a sentence at the range that we agreed to." J.A. 167.

In response, Trecika's counsel indicated her belief "that the plea agreement was actually accepted impliedly and explicitly," J.A. 168, and thus bound the court to impose the agreed upon sentence of 12 months and a day, J.A. 170–71. The court stated that "[t]he

6

plea agreement has been accepted subject to my imposition of the sentence that's prescribed in it." J.A. 170. And if the court imposed a different sentence, Trecika would "have her right to withdraw her guilty plea." *Id.* Over Trecika's counsel's continued objection, the district court maintained that, though the agreement had been accepted by the court, the court was not bound by the stipulated sentence. J.A. 170–72. The court stated it was "not able to accept the year and a day sentence because of the seriousness of the conduct that [Vera and Trecika] engaged in." J.A. 183. It then continued the hearing for 30 days, during which Trecika could decide whether to withdraw her plea or proceed to sentencing without the benefit of the stipulated sentence. J.A. 184. The district court also calculated the applicable guidelines range to be 46 to 57 months. J.A. 235.

Vera's second sentencing hearing was held the same day as Trecika's first hearing. At the start of that hearing, Vera's counsel made the same argument Trecika's counsel had just made at Trecika's hearing: that the court had already constructively accepted the plea agreement and was thus bound to impose the stipulated sentence. J.A. 188–89. Though the court had rejected that argument as to Trecika, and promptly rejected it as to Vera as well, Vera thus preserved the question of the district court's acceptance of the agreement for this appeal. Vera's sentencing was then continued again, for reasons unrelated to this appeal. J.A. 204.

At their respective reconvened sentencing hearings (Vera's third hearing and Trecika's second hearing), the court sentenced Trecika and Vera each to 36 months. Vera and Trecika each appealed their sentences, and now argue that the district court accepted the plea agreements and was thus bound to impose the stipulated sentence.

7

II.

"When a claim of breach of a plea agreement has been preserved, we review the district court's factual findings for clear error and its application of principles of contract interpretation de novo."[2] *United States v. Lewis*, 633 F.3d 262, 267 (4th Cir. 2011).

III.

Rule 11 of the Federal Rules of Criminal Procedure governs the plea process in federal courts. Under subsection (c)(1)(C) of that rule, a plea agreement "may specify that an attorney for the government will . . . agree that a specific sentence or sentencing range is the appropriate disposition of the case." Fed. R. Crim. P. 11(c)(1)(C). If an agreement contains such a specification, "the court may accept the agreement, reject it, or defer a decision until the court has reviewed the presentence report." Fed. R. Crim. P. 11(c)(3)(A). A specified sentence or sentencing range in an 11(c)(1)(C) agreement "binds the court once the court accepts the plea agreement." Fed. R. Crim. P. 11(c)(1)(C). If a court rejects an 11(c)(1)(C) agreement, it must (1) "inform the parties that the court rejects the plea agreement," (2) "advise the defendant personally that the court is not required to follow the plea agreement and give the defendant an opportunity to withdraw the plea," and (3) "advise the defendant

---

[2] The government contends that our review is for abuse of discretion because the proper question is whether the district court was justified in rejecting the plea agreements. *See* Resp. Br. at 11 (citing *United States v. Midgett*, 488 F.3d 288, 297 (4th Cir. 2007)). In light of the district court's clearly expressed concerns that the stipulated sentence was too low in light of the seriousness of the crime and the need for deterrence, it was well within its discretion to reject the agreements, if in fact that is what it did. But the question before this Court is whether the district court accepted the agreements, which is a question we review de novo.

personally that if the plea is not withdrawn, the court may dispose of the case less favorably toward the defendant than the plea agreement contemplated." Fed. R. Crim. P. 11(c)(5).

Vera and Trecika contend that the district court accepted the plea agreements and was thus bound to impose the 11(c)(1)(C) sentence. They rely on the docket entry indicating "Plea Agreement Accepted," which was entered contemporaneously with the Rule 11 hearing, and various statements the court made during subsequent hearings which, Appellants contend, demonstrate that the district court had accepted the agreements. For example, the district court stated at Trecika's first sentencing hearing that "[t]he plea agreement has been accepted subject to my imposition of the sentence that's prescribed in it," J.A. 170, and that the plea agreement "has been accepted because it has that condition [withdrawal of guilty plea] in it," J.A. 171. They further argue that when the district court stated that it was "going to reject the plea agreement *provision* that requires a sentence of a year and a day," J.A. 149 (emphasis added), the district court improperly modified a provision of an accepted agreement. *See United States v. Wood*, 378 F.3d 342, 350 (4th Cir. 2004) ("Modification of the terms of a plea agreement is beyond the power of the district court." (cleaned up)); *In re Morgan*, 506 F.3d 705, 709 (9th Cir. 2007) ("[W]hile the court is free to accept or reject a plea agreement, it may not do so on a piecemeal basis, and a Rule 11(c)(1)(C) stipulated sentence 'binds the court once the court accepts the plea agreement.'" (quoting Fed. R. Crim. P. 11(c)(1)(C)).

Appellants concede that the district court never expressly accepted the agreements but contend that the docket entry and these statements show constructive acceptance. *See United States v. Soloff*, 993 F.3d 240, 244 (4th Cir. 2021) ("Where the record furnishes

9

sufficient evidence to conclude that a district court constructively accepted the plea agreement, the court's failure to explicitly accept the agreement will not undo the parties' bargain."). By contrast, the government argues that the district court never accepted the plea agreements, expressly or constructively, and that its decision not to impose the stipulated sentence constitutes a rejection of the agreements, which was well within its discretion.

The text of Rule 11 is clear that if the district court accepts a Rule 11(c)(1)(C) plea agreement, it must impose the stipulated sentence set forth in the agreement. *See* Fed. R. Crim. P. 11(c)(1)(C) (stating that an 11(c)(1)(C) provision "binds the court once the court accepts the plea agreement"). Thus, whether the district court's imposition of a higher sentence constituted a breach of the plea agreements turns on whether the district court accepted the plea agreements.

The record is ambiguous as to whether the district court accepted the plea agreements. On the one hand, the docket entry indicates that the district court accepted the agreements (not just the plea), and the district court on the record during Trecika's first sentencing hearing said that "[t]he plea agreement has been accepted." J.A. 170. Further, after sentencing Trecika and Vera, the district court also reminded each that they had "waived [their] appellate rights in [their] plea agreement," which is true only if the district court accepted their plea agreements. J.A. 255, 283. On the other hand, the district court announced that it would impose a sentence higher than was stipulated and then gave Appellants the opportunity to withdraw their pleas, which is consistent with the procedures district courts must follow when rejecting Rule 11(c)(1)(C) agreements. *See* Fed. R. Crim. P. 11(c)(5). And, in an order

10

denying Trecika's motion for bond, entered after Appellants filed this appeal, the district court stated that it "sentenced Dunlap to thirty-six months after rejecting the parties' Federal Rule of Criminal Procedure 11(c)(1)(C) plea agreement." Order Denying Def's. Mot. for Bond Pending Appeal at 1. Based on these contradictory statements, the record is ambiguous as to whether the district court accepted the plea agreements.

We have previously declined to decide the question of how to resolve an ambiguous record under these circumstances. *See United States v. Soloff*, 993 F.3d at 244 n*.[3] Our sister circuits, however, have provided helpful guidance. The Sixth Circuit, in *United States v. Skidmore*, held that such ambiguity must be construed "against the district court," meaning that "the court's failure to elect clearly one of the options specified in Rule 11(e)(2) amounted to an acceptance of the plea agreement."[4] 998 F.2d 372, 375 (6th Cir. 1993). In other words, under *Skidmore*, if there is ambiguity in the record as to whether the district court accepted or rejected the plea agreement, the Sixth Circuit construes the ambiguity as acceptance.

The Seventh Circuit, though declining to expressly adopt the *Skidmore* rule because doing so was not necessary to resolve the case before it, noted the benefits of the Sixth Circuit's approach. *See United States v. Brown*, 571 F.3d 690, 695 (7th Cir. 2009). It explained that a defendant "who trades cooperation for government leniency" by entering

---

[3] We said in *United States v. George* that "such an ambiguity must be resolved in [the defendant's] favor." No. 89-5604, 1990 WL 27208, at *3 (4th Cir. Feb. 21, 1990). But *George* is an unpublished opinion and therefore has no precedential value.

[4] What was formerly Rule 11(e) is now Rule 11(c). *See United States v. Dews*, 551 F.3d 204, 205 n.1 (4th Cir. 2008).

11

into a plea agreement "finds himself in an uncertain bargaining position." *Id.* Not only is such a defendant at the mercy of the government, but "the defendant must also defer to the authority of the district court, which retains the right to reject the plea agreement." *Id.* Thus, the Seventh Circuit explained, best practice would require district courts to "stick[] as close as possible to the virtual 'checklist' that Rule 11 provides," including "explicitly stat[ing] at the plea hearing that it was deferring acceptance pending the PSR and, at the sentencing hearing that it was accepting the plea agreement." *Id.*

Today, we resolve the question left open in *Soloff*. We hold that when the record is ambiguous as to whether the district court accepted or rejected the parties' plea agreement, we construe that ambiguity in the defendant's favor. This approach places the onus of clarity on the district court, the actor that "possessed control over clarity." *United States v. Holman*, 728 F.2d 809, 812 (6th Cir. 1984). It also aligns with our general practice, in a related context, of construing ambiguities in plea agreements in favor of the defendant, rather than the government. *See United States v. Barefoot*, 754 F.3d 226, 246 (4th Cir. 2014) ("[A]ll ambiguities in the Plea Agreement are to be construed against the government as its drafter."). This rule recognizes the government's greater power throughout the plea process compared to that of the defendant.

Because we cannot conclusively determine on this record whether the district court accepted or rejected the plea agreements, we construe them in Vera and Trecika's favor. In this case, that means construing the ambiguity as acceptance of the plea agreements. And because the agreements at issue here are Rule 11(c)(1)(C) agreements, the agreements bound the district court to impose the stipulated sentence. *See* Fed. R. Crim. P. 11(c)(1)(C);

12

*Skidmore*, 998 F.2d at 376 ("Having accepted the agreement, the district court was required to adhere to the terms contained in the agreement as the parties understood those terms."). The district court's failure to adhere to the plea agreements requires us to vacate the judgments insofar as they conflict with the terms of the plea agreements, and remand for reentry of the judgments consistent with the stipulated sentence set forth in the plea agreements.[5]

IV.

We hold today that when the record is ambiguous as to whether a district court accepted or rejected a Rule 11(c)(1)(C) plea agreement, such ambiguity must be construed in the defendant's favor. We conclude that the record in this case is ambiguous and thus construe it in the manner urged by Vera and Trecika. Accordingly, we deem the district court to have accepted (and been bound by) the terms of the plea agreements between the Dunlaps and the government. The district court failed to adhere to the terms of the agreements, so we vacate and remand with instructions to reenter the judgments consistent with the terms of the plea agreements and this opinion.

---

[5] Vera and Trecika also argue, in the alternative, that the government breached the plea agreement and that the sentence imposed is procedurally and substantively unreasonable. Because we conclude that the district court's failure to impose a sentence consistent with the terms of the plea agreement requires vacatur and remand for resentencing, we do not reach these arguments. We note, however, that the government, in a letter submitted to this Court pursuant to Federal Rule of Appellate Procedure 28(j) one week prior to oral argument, conceded that its statements during the sentencing hearings below amounted to a breach of the agreement. Though this Court is troubled by the government's efforts to do an end run around an agreement that it presumably negotiated in good faith, we also acknowledge the government's effort to right that wrong in its Rule 28(j) letter. And we are certain that the government will not stand in the way of expeditiously resolving this case in accordance with the plea agreement on remand.

13

*VACATED AND REMANDED WITH INSTRUCTIONS*

14