**UNITED STATES of America,**

v.

**Pietro COSIMI, Defendant.**

**No. 03 CR. 514 (VM).**

United States District Court, S.D. New York.

May 11, 2005.

---

### DECISION AND ORDER

MARRERO, District Judge.

On December 3, 2004, defendant Pietro Cosimi ("Cosimi") pleaded guilty to Counts One and Three of Indictment S6 03 Cr. 514. Count One charged Cosimi under 21 U.S.C. § 846 for participating in a conspir-

acy to distribute a controlled substance known as MDMA or "Ecstacy," while Count Three accused him of possessing Ecstacy with intent to distribute it in violation of 21 U.S.C. § 841(b)(1)(C).

For the reasons stated on the record at the sentencing of Cosimi before the Court on April 29, 2005, as further elaborated upon in the statement of the Court set forth below, the Government's motion to find Cosimi in breach of his plea agreement, adjourn Cosimi's sentencing, and hold a *Fatico* hearing [1] in order to establish facts that would enhance the sentence recommended by the Sentencing Guidelines is denied. The Court sentences Cosimi to fifty-seven (57) months imprisonment upon consideration of the Sentencing Guidelines and the other sentencing factors listed in 18 U.S.C. § 3553(a).

## I. BACKGROUND

### A. THE DEFENDANT'S CONDUCT AND PLEA

Pietro Cosimi ("Cosimi") is one of seventeen defendants who have been indicted for their alleged participation in a global conspiracy to smuggle the illegal drug 3,4-methylenedioxymethamphetamine ("MDMA"), commonly known as "Ecstacy," into the United States. As alleged in the indictment, members of the conspiracy who were based in the Dominican Republic recruited individuals of European extraction, including Cosimi, who is an Italian citizen, to travel to the Netherlands to obtain Ecstacy. Once in the Netherlands, European natives such as Cosimi were met by local sources of supply, provided with suitcases in which tens of thousands of Ecstacy pills weighing several kilograms were secreted, and given airplane tickets to cities along the East Coast of the United States. According to the indictment,

the conspiracy employed dozens of couriers and imported over one million Ecstacy pills into the United States before it ceased operation. (*See* Superseding Indictment S6 03 Cr. 514 ¶¶ 3–6.)

Cosimi, one of the couriers for the conspiracy, was arrested on June 12, 2003, when he arrived at John F. Kennedy Airport from Europe while in possession of a suitcase that contained approximately two kilograms of Ecstacy pills. The operative indictment accuses Cosimi with participation in the conspiracy, and with possession of Ecstacy pills with intent to distribute them, based on Cosimi's transportation of drugs into the United States on that date. Cosimi initially entered a plea of not guilty, but ultimately changed his plea to guilty on December 3, 2004. During his plea allocution, Cosimi admitted to making an additional trip into the United States as a courier for the conspiracy before the trip that led to his arrest and indictment. He also sufficiently allocuted to the elements of the crimes for which he was actually charged. (*See* Transcript of Sentencing Hearing, dated April 29, 2005 ("Hr'g Tr.") at 23–29.)

In connection with Cosimi's plea, Cosimi and his attorney, David Lewis ("Lewis"), entered into a plea agreement with the Government on December 3, 2004 ("Plea Agreement") in which Cosimi and the Government stipulated that the offense level associated with Cosimi's conduct under the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines") was 25, which corresponds to a stipulated sentencing range of 57 to 71 months for someone with his criminal history (the "Stipulated Sentencing Range"). In the agreement, the Government promised that it would not prosecute Cosimi any further "for conspiring to distribute, and for possessing

---

1. The Government refers to *United States v. Fatico*, 579 F.2d 707 (2d Cir.1978), which established standards and procedures pertaining to pre-sentencing evidentiary hearings.

with the intent to distribute, between 1.4 and 2 kilograms of MDMA, from in or about May 2002 through in or about August 2003, as charged in the Indictment." (Plea Agreement at 1.) In exchange for this promise from the Government, the Plea Agreement committed Cosimi to accepting the validity of the Stipulated Guidelines Range, and to forego seeking any relief that may have otherwise been available to him under the Guidelines. The Government was similarly limited in its ability to seek an upward departure or adjustment under the Guidelines. As the Plea Agreement stated:

> The parties agree that neither a downward nor an upward departure from the Stipulated Sentencing Guidelines Range of 57 to 71 months' imprisonment set forth above is warranted. Accordingly, neither party will seek such a departure or seek any adjustment not set forth herein. Nor will either party suggest that the Probation Department consider such a departure or adjustment, or suggest that the Court *sua sponte* consider such a departure or adjustment.)

(Plea Agreement at 3.) The agreement also stipulated that Cosimi agreed "to waive all constitutional challenges to the Sentencing Guidelines," and "to be sentenced pursuant to the applicable Sentencing Guidelines." (*Id.* at 4.) The agreement was entered into before the United States Supreme Court announced its decision in *United States v. Booker,* —— U.S. ——, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), on January 12, 2005.

### B. *THE PARTIES' SENTENCING ARGUMENTS*

On April 18, 2005, as Cosimi's April 29, 2005 sentencing date approached, Cosimi submitted a lengthy sentencing letter to the Court ("Sentencing Letter"). The Sentencing Letter expressed Cosimi's in-

tent to remain bound by the terms of the Plea Agreement and his continued acceptance of the Stipulated Guidelines Range. The letter then proceeded to explain that under considerations made relevant to sentencing by *Booker,* the Court was no longer mandated to adhere to the Guidelines and could impose a non-Guidelines sentence below the Stipulated Guidelines Range. Accordingly, Cosimi argued that under the post-*Booker* sentencing regime, having weighed all of the factors articulated by 18 U.S.C. § 3553(a) ("Section 3553(a)") that the Court was now authorized by *Booker* to consider in addition to the Guidelines, the Court could properly sentence Cosimi to time served.[2]

The Sentencing Letter explicitly accepted the continued applicability and validity of the Guidelines calculation contained in the Plea Agreement, which was adopted by the Probation Department and incorporated into Cosimi's Presentence Investigation Report. The letter also expressed Cosimi's intent to remain bound by the terms of the Plea Agreement, presumptively meaning that were the Court to sentence Cosimi to a term of incarceration within or below the Stipulated Guidelines Range, he would accept his sentence as binding and not appeal it. (*See* Sentencing Letter at 1–2 ("We have no objection to the Guideline range or the manner of its calculation. We are bound by our plea agreement and separately believe it to be a correct computation under the U.S. Sentencing Guidelines."); Plea Agreement at 4 ("the defendant will not file a direct appeal, nor litigate under Title 28, United States Code, Section 2255 and/or Section 2241, any sentence within or below the Stipulated Sentencing Guidelines Range set forth above of 57 to 71 months").) It went on to explain that *Booker* and the

---

**2.** Cosimi has been incarcerated since his arrest on June 18, 2003. Thus, a sentence of

time served would result in an approximately 22–month term of imprisonment for Cosimi.

Second Circuit's decision in *United States v. Crosby*, 397 F.3d 103 (2d Cir.2005), now require the Court to take into account factors other than the Guidelines when determining a proper sentence for a defendant. Consequently, Cosimi sought to present information that would enable the Court, in applying the greater sentencing flexibility it now possesses, to consider those newly-relevant factors in the light most favorable to Cosimi. On this point, the letter stated:

> To the extent that the remedial elements of *Booker* permit argument of factors under Title 18 U.S.C. § [3553](a) that was previously barred from consideration we have set out those areas in order to present the possibility to the Court that the defendant should receive what is now denominated a non-Guideline sentence, a remedy unforeseen at the time of the plea in the instant matter.

*(Id.* at 3.) [3]

The Sentencing Letter asserted that there were two primary bases on which the factors articulated by Section 3553(a) would permit the Court to impose a sentence of time served on Cosimi. First, Cosimi contended that, pursuant to 18 U.S.C. §§ 3553(a)(1) and (a)(2)(C), his advanced age, his apparent lack of criminal history, and his status as an Italian national with no ability to speak English, supported a non-Guidelines sentence. [4] According to the letter, Cosimi's age, slight build, and lack of English language skills render him more likely to be victimized while in prison. In addition, according to studies cited by the letter, Cosimi's age and lack of criminal history indicate that he presents a low risk of recidivism, thus reducing the need for the sentence imposed "to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(C). (*See* Sentencing Letter at 8–9 (citing, *inter alia, United States v. Nellum,* No. 2:04–CR–30–PS, 2005 WL 300073 (N.D.Ind. Feb.3, 2005) (holding that the defendant's advanced age and other characteristics warranted a non-Guidelines sentence).)

Second, the letter argued that the Court should impose a non-Guidelines sentence on the grounds that, as an alien subject to deportation, Cosimi would not be able to avail himself of a number of means by which inmates would otherwise be able to obtain reductions in the severity or length of punishment, including home detention, community confinement, work release, or minimum security designation. (*See* Sentencing Letter at 9–11.) The letter acknowledged that the Second Circuit had prohibited consideration of the conditions of an alien's confinement as grounds for a downward departure under the Guidelines in *United States v. Restrepo,* 999 F.2d 640, 645–46 (2d Cir.1993), but claimed that the punishment faced by a defendant was made newly relevant to sentencing by Section 3553(a). (*See* Sentencing Letter at 10.)

The Government then submitted a letter to the Court dated April 22, 2005 ("Gov't Opp'n Letter"), that contended the Sentencing Letter violated the terms of the Plea Agreement by seeking a sentence of time served. On the basis of Cosimi's purported breach of the agreement, the Government sought to adjourn Cosimi's sentencing and hold a *Fatico* hearing to prove that Cosimi deserved a higher

---

**3.** The Sentencing Letter noted that, per *Crosby,* it was "advisable to refer to a sentence that is neither within the applicable Guidelines range nor imposed pursuant to the departure authority in the Commission's policy statements as a 'non-Guidelines sentence' in order to distinguish it from the term 'departure.'" *Crosby,* 397 F.3d at 111 n. 9, *cited by* Sentencing Letter at 4.

**4.** Cosimi will turn 62 on May 14, 2005.

Guidelines sentencing range than the range stipulated to in the Plea Agreement "unless Cosimi withdraws his letter of April 18, 2005 and agrees to abide by his promises in the plea agreement." (Gov't Opp'n Letter at 4.)

The Government argued that the Sentencing Letter's advocacy violated three provisions of the plea agreement: 1) Cosimi's consent "to be sentenced pursuant to the applicable Sentencing Guidelines"; 2) his agreement "to waive all constitutional challenges to the Sentencing Guidelines"; and 3) his promise to not seek any downward departure from, or adjustment of, the Stipulated Guidelines Range of 57 to 71 months' imprisonment. (*See id.* at 2.) According to the Government, Cosimi's arguments that the Court "must consider more than the Guidelines alone" when sentencing him (Sentencing Letter at 3), that a sentence imposed pursuant to the Guidelines alone would be unconstitutional (*see id.*), and that he should receive a sentence of "time served" (*id.* at 11) were "the precise arguments that he had promised not to make" in the context of his plea agreement. (Gov't Opp'n Letter at 2.) While the Government acknowledged that Cosimi did not challenge the Stipulated Guidelines Range, it contended that "he presented other arguments that make the parties' agreement about this range meaningless." (*Id.*) According to the Government, these arguments constituted an impermissible effort to "retain the positive features of his plea agreement (*i.e.,* the Government's concessions regarding his Guidelines range) while discarding its negative aspects (*i.e.,* his 'explicit consent' to be sentenced under the Guidelines)." (*Id.*)

The Government argued that it was entitled to cancel the Plea Agreement on the basis of Cosimi's purported breach. Noting that plea agreements are construed according to contract law principles *see id.* (citing *United States v. Yemitan,* 70 F.3d

746, 747 (2d Cir.1995))), the Government maintained that pursuant to *United States v. Cimino,* 381 F.3d 124, 128 (2d Cir.2004), it may elect to be freed from its obligations under a plea agreement when a defendant breaches his or her duties under the agreement. In *Cimino,* the Second Circuit held that the Government was authorized to seek a higher sentence than that stipulated to under a plea agreement pursuant to facts found in a *Fatico* hearing when the defendant persisted in breaching his or her obligations under the agreement. *See id.* The Government's letter sought a similar remedy in this case.

The Government further argued that *Booker* did not permit Cosimi to violate or abandon the Plea Agreement. Likening the Sentencing Letter to "efforts by defendants to abandon their plea agreements following the Supreme Court's decisions in *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and *Booker*" (Gov't Opp'n Letter at 4), the Government noted that courts have uniformly rejected defendants' efforts to overcome appeal waivers based on *Blakely* or *Booker,* or to withdraw from guilty pleas entered into before *Booker* based on the intervening change in law. (*See id.* at 4 (citing, *inter alia, United States v. Grinard–Henry,* 399 F.3d 1294, 1296 (11th Cir.2005), for the proposition that an appeal waiver in a plea agreement included waiver of the right to appeal a sentence under *Booker*).) According to the Government, Cosimi was similarly prohibited by his plea agreement from arguing for a non-Guidelines sentence, even though *Booker* would otherwise have allowed him to make this argument.

Both Cosimi and the Government submitted reply letters. Cosimi's reply letter, dated April 27, 2005 ("Reply Letter"), took issue with the Government's characterization of the Sentencing Letter as a breach

of the Plea Agreement. It sought a determination that, as a matter of law, the agreement remained in force and that Cosimi was entitled to its benefits. The Government replied by letter dated April 28, 2005 ("Gov't Reply Letter"), in which it cited the Second Circuit's recent decision in *United States v. Morgan*, 406 F.3d 135 (2d Cir.2005). In that decision, the Second Circuit joined other circuits that have considered the question in concluding that a pre-*Booker* appeal waiver was enforceable against a defendant who had sought to appeal his sentence on the basis of *Booker*. According to the Circuit Court, "the possibility of a favorable change in the law after a plea is simply one of the risks that accompanies pleas and plea agreements." *Id.* at 137.

## II. *DISCUSSION*

### A. *COSIMI DID NOT BREACH THE PLEA AGREEMENT*

The sole issue presented by the Government's motion, which appears to be one of first impression, is whether Cosimi's calling to the Court's attention the authority that exists after *Booker* to permit imposition of a non-Guidelines sentence, and his advocacy for a non-Guidelines sentence pursuant to that authority, represent a breach of his pre-*Booker* plea agreement.

Several of the Government's arguments, including those concerning the enduring validity of pre-*Booker* plea agreements and the remedies available to the Government in the event of a breach of those agreements, fail to address this issue. Cosimi apparently does not dispute that, if the Court were to find him in breach of the agreement, the Government would be enti-

tled under *Cimino* to cancel the agreement and advocate for a higher Guidelines sentence than that which had been agreed to by the parties. *See Cimino*, 381 F.3d at 128–29 (concluding that the Government may seek cancellation of a plea agreement when a defendant breaches the agreement, and may as a consequence prove Guidelines sentence-enhancing facts through a *Fatico* hearing).[5] Nor does he argue that the change in the law of sentencing wrought by *Booker* grants him the right to avoid obligations under the agreement, much less to withdraw from the agreement entirely. The law is clear on that issue as well, as the Government points out in its letters to the Court. *See, e.g., Brady v. United States*, 397 U.S. 742, 757, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), *cited by* Gov't Opp'n Letter at 4 (holding that a party could not withdraw from a plea simply because "later judicial decisions indicate that the plea rested on a faulty premise"); *Morgan*, 406 F.3d at 137–38. Cosimi has unequivocally expressed his intent to remain bound by his agreement.

Nor does Cosimi's Sentencing Letter raise the issue decided by *Morgan* and other cases construing the validity of pre-*Booker* appeal waivers. Those cases deal with plea agreement language that unambiguously waives a defendant's right to appeal a sentence, provided that the sentence is within the range stipulated to by the parties in the agreement. The appeal waiver contained in Cosimi's plea agreement, for example, states that "the defendant will not file any direct appeal, nor litigate under title 28, United States Code, section 2255 and/or section 2241, any sentence within or below the stipulated sen-

---

**5.** *Cimino* involved a situation in which the defendant had initially sought the *Fatico* hearing and had freely acknowledged that he was seeking to abandon the agreement. *See id.* at 126–27. However, the holding is equally applicable to a circumstance in which the find-

ing that a defendant has breached his or her obligations under a plea agreement, and the decision to hold a *Fatico* hearing to resolve disputes relevant to sentencing, are made over the defendant's objections.

tencing guidelines range set forth above of 57 to 71 months." (Plea Agreement at 4.) As *Morgan* noted, there is no indication in such language "that the parties intended for the appeal waiver not to apply to issues arising after, as well as before, the waiver." *Morgan,* 406 F.3d at 137. The Court expects that, after *Morgan,* Cosimi will be held to this bargain, and will not be able to appeal his 57-month sentence, which falls within the Stipulated Sentencing Range. It is not at issue in this case.

The portions of Cosimi's Plea Agreement that *are* at issue here relate to his consent: 1) "to be sentenced pursuant to the applicable Sentencing Guidelines" (Plea Agreement at 4); 2) "to waive all constitutional challenges to the Sentencing Guidelines" (*id.*); and 3) to not seek any downward departure from, or adjustment of, the Stipulated Guidelines Range (*id.* at 3). Cosimi argues that these provisions were not breached through his discussion of changes to sentencing law and his advocacy for a non-Guidelines sentence pursuant to changed law; the Government disagrees and seeks cancellation of the Plea Agreement on that basis. The Court will examine each of these provisions in turn to see whether they were breached.

■ The Court conducts this interpretive endeavor guided by several background principles. First, as the Government notes in its letter, plea agreements are construed according to the rules governing contract law. (*See* Gov't Opp'n Letter at 2 (citing *Yemitan,* 70 F.3d at 747).) Second, pursuant to those rules and other public policy considerations, plea agreements, which are drafted by the Government, are construed "strictly against the government." *United States v. Vaval,* 404 F.3d 144, 152 (2d Cir.2005); *see also Restatement (Second) of Contracts ("Restatement")* § 206 (1981) ("In choosing among the reasonable meanings of a promise or agreement or a term thereof, that

meaning is generally preferred which operates against the party who supplies the words or from whom a writing otherwise proceeds.").

■ Third, "[t]o determine whether a plea agreement has been breached, a court must look to what the parties reasonably understood to be the terms of the agreement." *Vaval,* 404 F.3d at 152 (quoting *United States v. Lawlor,* 168 F.3d 633, 637 (2d Cir.1999)). This analysis requires reference to the parties' understanding at the time they entered into the agreement. *See United States v. West,* 392 F.3d 450, 460 (D.C.Cir.2004) (quoting *Restatement* § 202 cmt. b) ("In interpreting the words and conduct of the parties to a contract, a court seeks to put itself in the position they occupied at the time the contract was made."). Fourth, "[w]herever reasonable, the manifestations of intention of the parties to a promise or agreement are interpreted as consistent with each other and with any relevant course of performance, course of dealing, or usage of trade." *Restatement* § 202(5).

■ ▪ The Court first examines whether Cosimi's Sentencing Letter violates the provisions of the Plea Agreement that waive his right to mount a constitutional challenge to the Sentencing Guidelines and grant his consent to be sentenced pursuant to the Guidelines. It examines these provisions together because they are both contained in the same paragraph, in which Cosimi waives a number of rights that the Government thought he might possess as a result of *Blakely* and the pending decision in *Booker.* The paragraph states, in relevant part:

> By entering this plea agreement, the defendant agrees to waive all constitutional challenges to the Sentencing Guidelines. Specifically, the defendant waives any right to have facts that the law makes essential to punishment ei-

ther (1) charged in an information or indictment, (2) proven to a jury, or (3) proven beyond a reasonable doubt. The defendant explicitly consents to be sentenced pursuant to the applicable Sentencing Guidelines and to have his sentence imposed (including any enhancements, adjustments, and departures) based on facts to be found by the sentencing judge by a preponderance of the evidence.

(Plea Agreement at 4.)

The Court concludes that Cosimi's Sentencing Letter does not violate this portion of the Plea Agreement. One of the letter's primary purposes was to inform the Court of the change in law that had occurred since Cosimi last appeared before it on the date of his plea. Lewis was professionally obligated, as Cosimi's attorney and an officer of the court, to call to the Court's attention the changes wrought by *Booker*. The Sentencing Letter, in stating that the Court "must consider more than the Guidelines alone" when sentencing Cosimi (Sentencing Letter at 3), accurately states the new law: *Booker* mandates that a court consider all of the factors listed in Section 3553(a), not merely the sentencing range produced by the Guidelines, in determining a defendant's sentence.[6] *See Crosby*, 397 F.3d at 110–11. This consideration is intended to be conceptually different from, and to take place subsequent to, the Court's Guidelines analysis. *See id.* at 112 ("Once an applicable Guidelines range has been determined, the sentencing judge will have the duty, imposed by subsection 3553(a)(4) to 'consider' it, along with all of the factors listed in section 3553(a)"); *id.* at 113 ("[T]he sentencing

judge should decide, after considering the Guidelines and all the other factors set forth in section 3553(a), whether (i) to impose the sentence that would have been imposed under the Guidelines, *i.e.*, a sentence within the applicable Guidelines range or within permissible departure authority, or (ii) to impose a non-Guidelines sentence.").

Cosimi's explication of courts' new sentencing flexibility after *Booker* does not in any way amount to a "constitutional challenge[ ] to the Sentencing Guidelines" (Plea Agreement at 4), as the Government suggests. Before Cosimi submitted the Sentencing Letter, *Booker* had *already* stricken the portion of Section 3553(a) that required a Court to sentence a defendant based only on the considerations afforded by the Guidelines. Cosimi's effort to call to the Court's attention the new law governing sentencing was not an effort to contest or change that law. Nor could Cosimi have "waived" the new considerations made relevant to sentencing by *Booker*, any more than he could have waived the right to be sentenced pursuant to the Guidelines themselves. Section 3553(a) does not grant waivable individual rights; it imposes legal duties on sentencing courts. As *Crosby* described it, sentencing courts after *Booker* "will have the duty ... to 'consider' ... *all of the factors listed in section 3553(a),*" *Crosby*, 397 F.3d at 112, when determining the sentence to be imposed. Cosimi's advocacy for a non-Guidelines sentence was made directly pursuant to the Court's new legal authority to grant such a sentence, and similarly cannot be considered a constitutional challenge to the Guidelines, or to any other

---

6. The Sentencing Letter's suggestion that a sentence imposed pursuant to the Guidelines alone would be unconstitutional after *Booker* (*id.*), would not be accurate where the sentencing court "imposed a sentence that was authorized by the jury's verdict" pursuant to

the Guidelines. *See Booker*, 125 S.Ct. at 769. Even if such a sentence were not unconstitutional, however, it would still represent an impermissible violation of the remedial construction of Section 3553 adopted by *Booker*.

aspect of the new law governing federal sentencing.

█ Nor should Cosimi's discussion of post-*Booker* sentencing law, or his advocacy for a non-Guidelines sentence pursuant to that law, constitute a violation of Cosimi's agreement to be sentenced "pursuant to the applicable Sentencing Guidelines and to have his sentence imposed ... based on facts to be found by the sentencing judge by a preponderance of the evidence." (Plea Agreement at 4.) Cosimi's discussion of new sentencing rules does not dispute that, after *Booker*, a sentencing judge "will be entitled to find all of the facts that the Guidelines make relevant to the determination of a Guidelines sentence and all of the facts relevant to the determination of a non-Guidelines sentence." *Crosby*, 397 F.3d at 112. He acknowledges that the Court, after *Booker*, "must consult th[e] Guidelines and take them into account when sentencing," *Booker*, 125 S.Ct. at 767, and further accepts the Guidelines calculation contained in the Plea Agreement and the Pre–Sentence Investigation Report.

Cosimi's advocacy for a non-Guidelines sentence pursuant to that new legal authority presents a closer question. To answer it, the Court examines what the parties reasonably must have understood, at the time the agreement was signed, to be the purpose of the paragraph containing Cosimi's consent to be sentenced "pursuant to" the Guidelines. At the time of Cosimi's plea, the parties had to have recognized that the law governing federal sentencing was in flux. *Blakely* had been decided, and the constitutionality of the Sentencing Guidelines was being considered by the Supreme Court. *See United States v. Mincey*, 380 F.3d 102, 103 (2d Cir.2004), ("There is considerable consternation and concern, in the federal courts and elsewhere, about the impact, if any, of the decision of the United States Supreme Court in *Blakely v. Washington,* —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), on the United States Sentencing Guidelines ...."), *vacated sub nom. Ferrell v. United States,* —— U.S. ——, 125 S.Ct. 1071, 160 L.Ed.2d 1053 (2005). After *Blakely*, courts and other stakeholders in the federal sentencing process believed that the critical question presented by that decision was whether the Sixth Amendment permitted a federal judge "to find facts, not reflected in a jury's verdict or admitted by the defendant, that form the basis for determining the applicable adjusted offense level under the federal Sentencing Guidelines and any upward departure from that offense level." *United States v. Penaranda*, 375 F.3d 238, 247 (2d Cir.2004) (en banc) (certifying this question to the Supreme Court for consideration after *Blakely* ). Few could have anticipated that the Supreme Court would answer this question in the affirmative, but only under the condition that application of the Guidelines would be treated as advisory by sentencing courts. *See Booker*, 125 S.Ct. at 764–65 (excising the provision of Section 3553 that made application of the Guidelines mandatory, as well as a statutory provision governing appellate review of Guidelines sentences, but otherwise affirming the constitutionality of the Guidelines); *id.* at 768 (acknowledging that the Supreme Court was not fully adopting any of the remedial approaches suggested by the parties).

The Court construes the provision of the Plea Agreement quoted above as intended to hedge against the largest risk the Government believed was presented by *Blakely* and the potential outcome of *Booker*: the possibility that the Supreme Court would grant federal defendants the right to have all facts essential to punishment "(1) charged in an information or indictment, (2) proven to a jury, or (3) proven beyond a reasonable doubt." (Plea Agree-

ment at 4.) Cosimi unambiguously waived those rights in the agreement. The Government obtained a benefit from this waiver by protecting Cosimi's plea from challenge in the event that *Booker* granted defendants any enhanced right to insist that any facts relevant to sentencing be specially charged or proved.

But *Booker* ultimately did not grant defendants any of these rights. Instead, it eliminated the requirement that sentencing courts rigidly adhere to the Guidelines when determining a sentence, and created an additional step for courts to consider after determining the Guidelines range applicable to a defendant. The "pursuant to" portion of Cosimi's Plea Agreement did not anticipate this turn of events. It contains no language prohibiting Cosimi from seeking the additional consideration available to him under Section 3553(a) after the Court has determined the Guidelines range applicable to him. Cosimi does not contest the Court's authority to sentence him "pursuant to" the Guidelines. He merely seeks to be sentenced "pursuant to" all of the elements of Section 3553(a), not merely the portion of the statute, Section 3553(a)(4)(A), that requires the Court to consider the applicable Guidelines range in determining the sentence to be imposed.[7]

If the Government had accurately anticipated the outcome of *Booker*, it could have prevented Cosimi from making this argument by prohibiting him from arguing for a sentence below the Stipulated Guidelines Range pursuant to *any* authority. This is the exact approach that the Government has adopted since *Booker* issued. For example, another defendant in this case,

Frank Kleinhenze ("Kleinhenze"), pleaded guilty to Count 1 of the operative indictment on March 10, 2005, after *Booker* issued, pursuant to a plea agreement. In that agreement, Kleinhenze agreed that "a sentence within the guidelines range stipulated in [his] plea agreement would constitute a reasonable sentence in light of all the factors set forth in Title 18, United States Code, Section 3553(a)," and that neither he nor the Government would be able to "seek a sentence outside of the Stipulated Guidelines Range or suggest that the probation department or the Court consider a sentence outside of this range." (Transcript of Kleinhenze Plea Hearing, dated March 10, 2005 ("Kleinhenze Hr'g Tr.") at 16.) The Government's recognition that *Booker* required it to "fix" its standard plea agreement in order to preclude defendants from arguing for non-Guidelines sentences further supports the Court's interpretation of Cosimi's agreement.

■ The Court turns next to the Government's argument that the Sentencing Letter violates the provision of the Plea Agreement that states: "The parties agree that neither a downward nor an upward departure from the Stipulated Sentencing Guidelines Range of 57 to 71 months' imprisonment sent forth above is warranted. Accordingly, neither party will seek such a departure or seek any adjustment not set forth herein." (Plea Agreement at 3; *see also* Gov't Opp'n Letter at 2 (arguing that the Sentencing Letter violates Cosimi's agreement to "not seek any adjustment of the stipulated Sentencing Guidelines range").)

7. To the extent that the intent of the Plea Agreement's "pursuant to" language is ambiguous, it should be construed "strictly against the government." *Vaval*, 404 F.3d at 152. The entire paragraph in which this language is contained operates as a unilateral waiver of Cosimi's rights to have facts relevant to sentencing specially charged or proved. Consequently, it should be construed narrowly in order to avoid an interpretation that would be overly restrictive of Cosimi's rights.

Cosimi's explication of the new law governing sentencing does not constitute· an effort to seek a "departure" or "adjustment." Consequently, it is only Cosimi's advocacy for a non-Guidelines sentence pursuant to the law's new flexibility that arguably could constitute a breach· of the Plea Agreement. The Court concludes, however, that ·the agreement's use ·of the terms· "departure" and "adjustment," when understood in the "usage of trade" relevant to ·sentencing at the time the· agreement was made, *see Restatement* § 202(5), refer to distinct types of sentence modifications available under the Guidelines, not to imposition of a non-Guidelines sentence made legal only after *Booker*.

As ·the Government well knows, under the longstanding jurisprudence governing sentencing, the term "departure" refers to a ˙ sentence that diverges from the otherwise-applicable Guidelines sentencing range under standards articulated by the Guidelines. As *Crosby* noted of the term "departure":

> A "departure," in the jurisprudence of the mandatory Guidelines regime, meant a sentence above or below the applicable Guidelines range when permitted under the standards governing departures. A "departure" was not a sentence within

the applicable Guidelines range, but it was nonetheless a "Guidelines sentence," *i.e.*, imposed pursuant to the departure provisions of the policy statements in the Guidelines, as well as the departure authority of subsection 3553(b)(1).

*Crosby,* ˙397 F.3d at 111 n. 9.[8]

Cosimi did not violate the provision of the Plea Agreement prohibiting him from seeking a departure from the otherwise-applicable Guidelines range. After explicitly accepting the Probation Department's Guidelines calculation and disavowing any authority to seek a downward departure (*see* Plea Agreement at 3 ("as we are obligated to not argue for any downward departures, we are bound by that agreement")), Cosimi sought the Court's consideration of additional circumstances *Booker* made relevant to sentencing. These arguments could not even arguably sustain a downward departure under the jurisprudence of the Guidelines. Cosimi recognizes that his arguments concerning the likely conditions of his confinement were explicitly rejected as a basis for departure by the Second Circuit in *Restrepo*. His arguments concerning his age similarly could not be sustained under Section 5H1.1 of the Guidelines, which states that a downward departure may be available

---

**8.** The Sentencing Guidelines themselves define "departure," in relevant part, as "imposition of a sentence outside the applicable guideline range or of a sentence that is otherwise different from the guideline sentence." *U.S. Sentencing Guidelines Manual* § 1B1.1, cmt. n. 1(E). While· post-*Booker* non-Guidelines sentences could fit within this definition of "departure," since they are "different from the guideline sentence" that would otherwise apply to a defendant, *Crosby* and the Guidelines themselves indicate that the term "departure" as used in the Plea Agreement is a · imposed *pursuant to* the rules articulated by the Guidelines. *Crosby* states that a non-Guidelines sentence may be distinguished from a departure on the grounds that a non-Guidelines sentence is "neither within the ap-

plicable Guidelines range nor imposed *pursuant to the departure authority* in the [Sentencing] Commission's policy statements," *Crosby,* 397 F.3d at 111 n. 9 (emphasis added), and that a non-Guidelines sentence should be distinguished from a sentence imposed "under the Guidelines, *i.e.,* a sentence within the applicable Guidelines range or *within permissible departure authority,*" *id.* at 113 (emphasis added). Moreover, all of the pre-*Booker* caselaw interpreting the Guidelines referred to departures as being departures *from* the otherwise-applicable Guidelines range that were authorized *by* the Guidelines themselves. The Government had to have been cognizant of this Guidelines-specific definition of "departure" when it drafted the Plea Agreement.

based on age only where "the defendant is elderly and infirm and where a form of punishment such as home confinement might be equally efficient as and less costly than incarceration." U.S.S.G. § 5H1.1. Cosimi is not infirm, nor is he eligible for home confinement.

The term "adjustment" also has a specific meaning in the context of the Guidelines. It refers to changes to a defendant's offense level or criminal history category based on standards articulated by the Guidelines. As described in *Witte v. United States*, 515 U.S. 389, 411, 115 S.Ct. 2199, 132 L.Ed.2d 351 (1995), "[t]he Guidelines provide for specific sentencing adjustments for 'criminal history' (*i.e.*, character of the offender) and for 'relevant conduct' (*i.e.*, character of the offense)." Chapter Three of the Guidelines, entitled "Adjustments," enumerates and interprets several of the bases on which a Guidelines offense level may be adjusted upward or downward.

The Plea Agreement's references to the term "adjustment" reinforce the conclusion that it was intended to refer to adjustments "imposed pursuant to the [adjustment] provisions of ... the Guidelines," *Crosby*, 397 F.3d at 111 n. 9, rather than

any "non-Guidelines" modification of a sentence that may be authorized by *Booker*. The agreement states that "neither party will seek ... any adjustment *not set forth herein.*" (Plea Agreement at 3 (emphasis added).) The Guidelines adjustments referred to are "set forth" earlier in the agreement, in a section that indicates Cosimi would be entitled to a three-level downward adjustment pursuant to Section 3E1.1 of the Guidelines based on his acceptance of responsibility for the charged offense. (*Id.* at 2.) The agreement makes no effort to waive Court consideration of non-Guidelines factors enumerated by Section 3553(a), and does not indicate anywhere that the word "adjustment" should have any meaning other than its customary one under the Guidelines.[9] Nor is it likely that the parties could reasonably have intended at the time the agreement was signed to have the term "adjustment" refer to an as-yet unknown "non-Guidelines" sentence.[10]

The Court concludes by noting that at least two important issues concerning the preclusive scope of pre-*Booker* plea agreements remain unresolved by this opinion. First, the Court does not decide whether pre-*Booker* plea agreements of the type analyzed here should be read to prevent the Government from seeking a non-

9. Even if the Government intended the prohibition on seeking an "adjustment" to prohibit Cosimi from seeking any sentence outside of the Stipulated Guidelines Range under any authority, it did not include that language into the agreement, as it has done in post-*Booker* plea agreements. Application of the rule construing any ambiguities in a plea agreement against the Government would also support the Court's conclusion in this case, where the customary definition of the term "adjustment" would benefit Cosimi.

10. The Government may be able to argue that the change in circumstances wrought by *Booker* should allow it to cancel the Plea Agreement under the contractual doctrine of frustration of purpose. In order to succeed, however, the Government would have to

prove that its principal purpose in entering into the agreement was frustrated by *Booker*, an effort that may have difficulty succeeding given the substantial benefits obtained by the Government from Cosimi's plea agreement notwithstanding its failure to preclude arguments for a non-Guidelines sentence. *See Restatement* § 265 ("Where, after a contract is made, a party's principal purpose is substantially frustrated without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his remaining duties to render performance are discharged, unless the language or the circumstances indicate the contrary."). The Government has not made that argument here, however, and the Court consequently declines to consider it further.

Guidelines sentence that is higher than that stipulated to by the parties. The interpretive canon construing any ambiguities in a plea agreement against the Government suggests that, to the extent the Court's decision authorizing Cosimi to argue for a non-Guidelines sentence rests on any ambiguities in the agreement, those ambiguities might also be construed to prevent the Government from making similar arguments. On the other hand, a plea agreement is a contract, and must be interpreted in a manner that makes sense of the instrument. It seems unreasonable to interpret the agreement in a manner that would allow a defendant, but not the Government, to make arguments under Section 3553(a), where the agreement makes no mention at all of that statutory provision or the considerations newly available under it. Consistent interpretation of the agreement should lead to the conclusion that the Government, like a defendant, is not prohibited by pre-*Booker* plea agreements of the form discussed here from making arguments relevant to sentencing under Section 3553(a).

Even if the plea agreement itself does not prevent the Government from making arguments for non-Guidelines sentences, the·Government may be uniquely obligated to refrain from making arguments for non-Guidelines sentences that intentionally seek to mask, or even that could reasonably be interpreted as, an argument for an upward departure or adjustment that is prohibited by the agreement. As the Second Circuit has indicated, courts must not "hesitate to scrutinize the government's conduct [related to plea agreements] to ensure that it comports with the highest standard of fairness." *United States v. Lawlor,* 168 F.3d 633, 637 (2d Cir.1999). "[B]ecause plea bargaining requires defendants to waive fundamental constitutional rights, we hold prosecutors engaging in plea bargaining to the most meticulous standards of both promise and performance." *Id.* at 636 (quoting *United States v. Velez Carrero,* 77 F.3d 11, 11 (1st Cir. 1996)). Resolution of this issue, however, must await the appropriate case, as the Government did not seek a non-Guidelines sentence for Cosimi.

Second, the Court does not reach the related, and similarly difficult, question of whether or to what extent a defendant who is prohibited by his or her plea agreement from moving for a downward departure or adjustment may nonetheless rely on language contained in the Guidelines or related policy statements, or on caselaw interpreting grounds for departure enumerated by the Guidelines, in seeking a non-Guidelines sentence under Section 3553(a). As discussed above, Cosimi's arguments for a non-Guidelines sentence under Section 3553(a) were not, and could not be, based on any grounds for departure or adjustment cognizable under the Guidelines. In another case, however, it may be apparent to a sentencing court that a defendant is impermissibly seeking to avoid the burdens of his agreement while obtaining its benefits by denominating an argument as a plea for a "non-Guidelines" sentence even though it is in all other respects indistinguishable from an argument for a "Guidelines" downward departure or adjustment.

## B. *THE SENTENCE IMPOSED*

■ After reviewing the Plea Agreement, the Guidelines analysis provided by the Probation Department, and the various sentencing factors articulated in 18 U.S.C. § 3553(a), the Court ultimately decided to impose a Guidelines sentence of 57 months imprisonment, albeit one at the bottom of the Stipulated Guidelines Range.[11] It re-

---

11. Even though the Court chose to impose a sentence within the Stipulated Guidelines Range, the Government's motion to cancel Cosimi's Plea Agreement was not moot. Had

jected Cosimi's arguments for a sentence of time served for several reasons. First, Cosimi allocuted to engaging in two trips during which he imported Ecstacy into the United States, not merely the one trip that served as the basis for his guilty plea and Guidelines calculation. His admission indicates increased culpability that is not reflected in the operative indictment or the Stipulated Guidelines Range, but that must nonetheless be taken into account. Second, while the Court is mindful of Cosimi's age, and his remorse for what he has done, it must consider the need for the sentence imposed to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," 18 U.S.C. § 3553(a)(2)(A), when determining what a fair sentence would be under the Guidelines.

Third, the Court is directed by Section 3553(a)(6) to consider "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct." This is particularly true in a large and complicated case such as this one, where there are several defendants, including Kleinhenze, who were drug "mules" like Cosimi and who have similar levels of culpability, but who are prohibited by language in their plea agreements from arguing for a non-Guidelines sentence pursuant to Section 3553(a). In addition, the need for the sentence imposed to be sufficiently severe that it would deter similar criminal conduct, see 18 U.S.C. § 3553(a)(2)(B), and reflect the seriousness with which Congress and the Guidelines treat partic-

ipation in a drug trafficking conspiracy, *id.* § 3553(a)(4)(A), counsel against imposition of a non-Guidelines sentence in this case.

On the other hand, the Court finds that the Section 3553(a) factors cited by Cosimi support imposition of a sentence at the lowest end of the Stipulated Guidelines Range. Cosimi's age, his lack of criminal history, and his strong desire to return to Italy and resume a law-abiding life following his release from prison indicate that he presents a low danger of recidivism. Thus, there is little need for the sentence imposed to "protect the public from further crimes of the defendant." *Id.* § 3553(a)(2)(C). Moreover, Cosimi's lack of criminal history and his expression of genuine remorse to the Court indicate that "the history and characteristics of the defendant," *id.* § 3553(a)(1), support imposition of a sentence at the bottom of the Guidelines range.

### III. CONCLUSION

For the reasons set forth above, it is hereby

**ORDERED** that the Government's motion to adjourn Cosimi's sentencing based upon Cosimi's alleged breach of his plea agreement is DENIED.

**SO ORDERED.**

the Court permitted the Government to cancel the Plea Agreement, and to seek recalculation of the Guidelines range based on facts not contained in the operative indictment or currently known to the Court, the Court would have needed to take that potentially enhanced sentencing range "into account when sentencing." *Booker*, 125 S.Ct. at 767; 18 U.S.C. § 3553(a)(4)(A). Consideration of a new

Guidelines range may have led the Court to alter its sentencing determination. In addition, had the Court concluded that Cosimi breached the Plea Agreement, "[p]resumably, the Government could have brought a new indictment and demanded that [Cosimi] either plead guilty a second time or go to trial." *United States v. Cimino*, 381 F.3d 124, 128 n. 3 (2d Cir.2004).